In the Matter of the Application of CHARLES F. REIF, Respondent, for a Peremptory Mandamus Order against FRANK X. SCHWAB, Mayor, ROSS GRAVES, Commissioner of Finance and Accounts, and Others, Constituting The Council of the City of Buffalo, Appellants.

Fourth Department, December 6, 1922.

**Municipal corporations — mandamus to compel commissioner of finance and accounts of city of Buffalo to countersign warrant for payment for balance of salary of general supervisor in department of public instruction — money on hand, appropriated for educational purposes, sufficient to pay salary — general supervisor is not teacher — salary not automatically increased under Education Law, §§ 882 and 884 — board of education had power to fix salary — common council could not decrease salary — mandamus order granted — interest allowed.**

The general supervisor in the department of public instruction in the city of Buffalo is not a member of the supervisory and teaching staff of the department, but is employed in the business department with clerical and administrative duties, and it seems, therefore, that the yearly increment of salary which, under sections 882 and 884 of the Education Law operates automatically, does not apply to him.

The common council of the city of Buffalo has power to determine the gross amount of money to be appropriated for educational purposes but it does not have any power to decrease the salary of an employee of the department of public instruction. The power to fix salaries of employees lies exclusively with

the board of education of the city and, therefore, the commissioner of finance and accounts could not legally refuse to countersign a warrant authorizing the payment of the salary of the general supervisor on the basis of the annual salary fixed by the board of education solely for the reason that the salary of that employee had been fixed at a less amount by the common council, where there were sufficient funds on hand to pay the salary of the general supervisor as fixed by the board of education.

The general supervisor is entitled to a peremptory mandamus order compelling the commissioner of finance and accounts to countersign the warrant for his salary, and is entitled also to recover interest on the balance due on his salary from the date of the demand therefor.

APPEAL by the defendants, Frank X. Schwab and others, from a peremptory mandamus order of the Supreme Court, made at the Erie Special Term and entered in the office of the clerk of the county of Erie on the 26th day of October, 1922, commanding said Ross Graves, as commissioner of finance and accounts of the city of Buffalo, to countersign a warrant drawn on the treasurer of that city, authorizing the payment of an alleged balance of salary due the petitioner.

*William S. Rann,* Corporation Counsel [*John E. Livermore* of counsel], for the appellants.

*Botsford, Lytle, Mitchell & Albro* [*Preston M. Albro* of counsel], for the respondent.

DAVIS, J.:

The question here presented differs from that in *Matter of Fleischmann* v. *Graves* (118 Misc. Rep. 214; affd., 202 App. Div. 825), where the question was one of the right of the board of education to employ and pay legal counsel; and from that in *Matter of Fuhrmann* v. *Graves* (203 App. Div. 507), where the superintendent of schools had been engaged at a fixed salary; and from that in *Matter of Pillsbury* v. *Schwab* (204 App. Div. 901), where the petitioner was engaged in educational work and belonged to a class whose salary was regulated to a certain extent by statute, and was increased and his position changed without authorization by the council.

The petitioner in the instant case is designated as " general supervisor " in the department of public instruction. It appears from the record that he is not qualified to engage in instruction work and is not so employed, nor does he supervise the work of others engaged in such work; but he is employed in the business department and has clerical and administrative duties. Prior to January 1, 1920, the petitioner's salary had been fixed by the board of education at the sum of $3,200 per annum. It is claimed that on January 1, 1920, his salary became automatically increased

under the law regulating salaries, to $3,600 per year; and that on August first further amendments to the Education Law automatically increased his salary to $4,000 per annum. The board apparently adopted the view that his salary was thus automatically increased and has by its action ratified such increase.

In filing with the city authorities the itemized estimate of its budget for the fiscal year of 1920, the board included an item of salary for the petitioner of $3,600. This was reduced by the council in making up its appropriation for education to the sum of $3,200. From January 1 to July 1, 1920, the petitioner received a salary at the rate of $3,600. This the appellants say was due to an error on the part of the commissioner of finance and accounts. Since July first that officer has refused to countersign the orders for salary in excess of at the rate of $3,200 a year, and this proceeding is to compel the countersignature of the commissioner to a warrant for the balance of the salary unpaid from July 1, 1920.

The claim of the appellants, in brief, is that as to items of this character the council has the right in its appropriation not only to determine the gross amount for educational purposes, but to exercise discretion in approving, disapproving and modifying items in the proposed budget submitted, and to fix and determine definitely the salaries of employees not engaged in educational work. The respondent on the other hand contends that the board of education is a separate and independent corporate body charged by law with certain definite duties and given broad and ample powers in the administration of the public educational system; and that those powers are exclusive of control by the municipality and comprehend the complete control of all matters of education in the city, and the fixing of salaries not only of its superintendent and members of the supervising and teaching staff, where they are not otherwise fixed by law, but those of all other employees, limited only by the total amount of money legally within their control and available for use.

It has already been recognized that the provisions of law governing the duties of boards of education and of municipal authorities are somewhat in conflict. (*Matter of Hirshfield* v. *Cook*, 227 N. Y. 297; *Matter of Emerson* v. *Buck*, 230 id. 380.) It is difficult to see how it could be otherwise when a separate corporate body is created as a department of the city and is entitled to demand and receive funds from moneys raised by taxation in the city, yet claiming the right to act independently of the legislative and administrative departments of government of the city. The municipal authorities would naturally seek to apply to this department of the city government those provisions of law contained in its charter and

elsewhere applicable to other departments. No doubt with this conflict of authority in mind, if the municipal officers and the members of the board of education realized that they were engaged in a common purpose, to wit, to expend moneys received from taxation in the most economical and efficient manner possible for the public welfare, they could meet in a spirit of conciliation and agree upon some policy that would accomplish the desired result without straining to assert and maintain abstract rights and prerogatives. In the experiences we have thus far had, no such spirit has been manifest.

We may decide, I think, without difficulty, one of the minor questions involved. The yearly increment of salary which by law operates automatically, seems in Buffalo to apply only to salaries of the supervising and teaching staff. (Education Law, § 882, as added by Laws of 1919, chap. 645; Id. § 884, added by Laws of 1919, chap. 645, as amd. by Laws of 1920, chap. 680.) To this class the petitioner did not belong. The board may in its discretion increase the minimun salaries and salary increments of any members of the supervising and teaching staffs or *other employees* whose salaries are not fixed by the provisions of the Education Law. (Id. § 887, as added by Laws of 1919, chap. 645.) It does not sufficiently appear in the record that the board exercised its discretion in fixing salaries of other employees and providing for the increment so that the petitioner might claim that his salary was increased automatically. But, as I have already stated, the board seems by its own act to have made increases in his salary, twice in one year, so that the question of whether or not it automatically increased is to a certain extent academic.

The funds the board has under its control are chiefly derived from the following sources: (1) An amount annually appropriated by the Legislature for the support of the common schools and apportioned by the Commissioner of Education. The moneys so apportioned are required to be applied exclusively to the payment of teachers' salaries. (Education Law, § 490.) (2) Appropriations made by the governing body of the city and raised by taxation as a part of the annual city budget. (Id. § 877, subd. 6, as added by Laws of 1917, chap. 786.) (3) Small sums being the proceeds from sales of text books, rates from tuition and similar items.

The salaries of the supervising and teaching staff being to a large extent fixed by statute, and a considerable portion of the total expenditure therefor being provided by the State, must necessarily be controlled by the board of education free from interference on the part of the municipal authorities. (*Matter of Fuhrmann* v. *Graves, supra.*)

Concerning salaries of other employees and expenditures for care, management and repairs, there would naturally be room for greater doubt as to independent control by the board, where it was deriving all its funds from the municipal government in which it was, in a sense, a department. The provisions of section 877, subdivision 6, of the Education Law (as added by Laws of 1917, chap. 786) give some substantial basis for defendants' position, for it is there provided that the estimate made by the board shall be filed and acted on by the council in the same manner and with the same effect as other department estimates. Nevertheless, the purpose of the Legislature from the whole statute seems reasonably clear. It has cast upon boards of education as separate corporate bodies representing the State, the responsibility of furnishing an efficient system of education. (*People ex rel. Wells & Newton Co.* v. *Craig*, 232 N. Y. 125.) To that end it has clothed them with large powers, in the exercise of which they must act on independent judgment. It has provided that a board of education in a city shall have (among others) the power to create and maintain such positions as in its judgment may be necessary for the proper and efficient administration of its work, and to appoint such auditors, attendance officers, secretaries, clerks, janitors and other employees in the business management or direction of its affairs as the board shall determine necessary for the efficient management of the schools and other business activities; and to determine their duties except as otherwise provided by law. (Education Law, § 868, subd. 2, as added by Laws of 1917, chap. 786.) The board may fix the salaries not only of the teaching staff but of *all other employees* whose salaries are not fixed by law. (Id. § 887, as added by Laws of 1919, chap. 645.)

The board of education may not incur a liability or an expense chargeable against the funds under its control or of the city for any purpose in excess of the amount appropriated or available therefor, or otherwise authorized by law. (Id. § 877, subd. 10, as added by Laws of 1917, chap. 786.) It must submit annually to the council an itemized estimate of the moneys it deems necessary for educational purposes. (Id. § 877, subd. 1, as added by Laws of 1917, chap. 786.) The council, after examination of such estimate, may, in its discretion, reduce the amount demanded by the estimate (*Matter of Emerson* v. *Buck, supra*); but the reduction must be in the gross amount. The detailed items are, I think, to give the council information and aid it in determining the total amount to be appropriated. The reduction in the items of salaries or expenditures made by the council are, I think, of no more effect than the suggestion that in its judgment such reductions are advisable. Its

action may point out to the board the reasons for making a reduction from the total estimate, and indicate the items deemed least necessary in the proper and economical management of the schools.

I think such changes in the items are advisory only; and while entitled to great consideration as coming from the body in general control of the city government and particularly of its finances and taxation, are not controlling. Under the duties with which it is charged, the board must make the final decision as to how the money within its control shall be expended in providing an efficient system of education, with high regard for the proper instruction, protection of health and general welfare of the children committed to its charge. In its powers and activities it is limited only by the amount of funds within its control, and by the definite provisions of law pertaining to the use of such funds.

The provision of law (Education Law, § 880, subd. 3, as added by Laws of 1917, chap. 786) requiring the countersignature of the commissioner of finance and accounts on the warrant, and requiring the board to classify its funds and furnish data to the financial officers of the city, is merely to enable that officer to keep an account of the disbursements, and an additional protection to insure compliance with statutory requirements and the genuineness of the audit by the board. (*Matter of Fleischmann* v. *Graves, supra.*)

It appearing that there are sufficient funds on hand to pay the salary of the petitioner as fixed by the board, I reach the conclusion that the defendant Graves was not authorized to determine the legality of the charge and refuse to countersign the warrant; but that the matter of the petitioner's salary was for the sole determination of the board. When it had been duly audited and allowed, the petitioner was entitled to receive it.

The order appealed from requires the payment of the balance due on salary *with interest.* The appellants challenge the validity of that part of the order which awards interest, on the ground that the board of education has not audited a claim for interest. The claim has been audited and payment demanded. Interest would, therefore, follow as a matter of law. The money of the petitioner has been withheld because, as we now determine, of the unlawful act of the fiscal officer. In a claim for unpaid salary interest is recoverable from the time of demand. (*Taylor* v. *Mayor,* 67 N. Y. 87; 28 Cyc. 459, 1754.)

The order should be affirmed, with costs.

All concur.

Order affirmed, with costs.