JUAN S. MANGUAL, MAYOR OF THE MUNICIPALITY OF JUANA DÍAZ, Petitioner, *v.* DISTRICT COURT OF PONCE, Respondent.

No. 1292. Argued June 1, 1942.—Decided July 29, 1942.

*Felipe Colón Díaz* and *Carlos J. Teissonniere* for petitioner. *R. Hernández Matos,* attorney for intervener, respondent in main proceeding.

MR. JUSTICE SNYDER delivered the opinion of the court.

On August 20, 1941, the Mayor of Juana Díaz preferred three charges against Sixto Acosta, Secretary-Auditor of the said municipality, reading as follows:

"Charge Number One: Because on Sunday, the 17th of August instant, about 6:15 p.m., you presented yourself at the Municipal Hospital of Juana Díaz, P. R., and without any legal authority, dismissed from said municipal hospital Andrea Santiago, who was working there temporarily as a substitute servant for Felícita Rodríguez, with the consent of the undersigned mayor.

"Charge Number Two: That on August 20, 1941, between 9:30 and 10:00 a.m., you treated the undersigned mayor disrespectfully and without due consideration, provoking him by words, put him out of your office, and drawing from a drawer of your desk a revolver, a deadly weapon, aiming it at him and threatening him with such weapon, to the extent that, in order to prevent you from using said weapon, there was required and took place the intervention of the following persons: Ramón García Rodríguez, janitor of the city hall; Emilio R. Rodríguez, office clerk; Víctor Cruz, foreman of the municipal public works; Pedro A. Ocasio, member of the Legislative Assembly; and Miss Elvira Ortiz, clerk in the municipal auditor's office.

"Charge Number Three: That on August 3, 1941, without any legal authority, you appointed Aurora Sierra Cuascú as graduate nurse of the Municipal Hospital of Juana Díaz, P. R., who by virtue of such appointment assumed charge and worked as said nurse until the 19th of the current month, without the undersigned mayor having ever authorized you to take such action."

On the date set for the hearing, Acosta's attorney filed both an answer and a petition calling on the mayor to disqualify himself, pursuant to §29 of Act No. 53, Laws of Puerto Rico, 1928, as amended by Act No. 98, Laws of Puerto Rico, 1931, as the officer to pass on these charges, and to appoint an administrative officer to serve in his place for that purpose. This petition was signed by Acosta's attorney alone, it was not verified, and no evidence was offered to establish the statements made therein, except "the charges themselves". The petition, in its pertinent part, reads as follows:

"2. That you are the person who filed said charges, one of which being that the respondent provoked you by words, behaved disrespectfully and without consideration towards you, put you out of

his office and threatened you with a revolver; the others have reference to interferences from the respondent with your functions as mayor.

"3. That you cannot be at once the complainant, a witness, and the judge of your own acts, nor can you, because of your direct, immediate, and personal interest in the outcome of such charges, be in a position to give the respondent a just, fair, and dispassionate opportunity to defend himself, as you are personally and deeply prejudiced against this respondent and are therefore incapable of determining them without bias."

The mayor overruled the petition, and proceeded to take testimony. Acosta's attorney declined to cross-examine the witnesses offered to sustain the charges or to offer testimony on his own behalf, on the theory that the mayor's refusal to disqualify himself rendered the entire proceeding null *ab initio*. The mayor, over the objection of counsel for Acosta, was among the witnesses who testified on the second charge. On September 12, 1941, the mayor entered a "Statement of Facts and Order", finding that all the charges had been proved "even excluding from consideration his own testimony", and discharging Acosta as Secretary-Auditor.

On October 10, 1941, Acosta filed a suit entitled "Review of Administrative Proceeding" in the District Court of Ponce, pursuant to the aforesaid Acts Nos. 53 and 98. Acosta prayed that the order of the mayor be annulled and that he be restored to his post as secretary-auditor. He assigned the following alleged errors: (*a*) the charges did not allege facts sufficient to justify his removal as an employee; (*b*) the charges were not proved; (*c*) the mayor should have granted the petition for his disqualification; and (*d*) the mayor acted with passion, prejudice, and partiality.

The case was submitted to the district court for decision on the record before the mayor. The district court concluded that the mayor should have granted the motion for disqualification. Consequently, the court held that errors (*c*) and (*d*) had been committed, and that it was unnecessary to con-

sider errors (*a*) and (*b*). The district court therefore annulled the order of the mayor. We granted certiorari to review this action of the district court.

In coming to its conclusion that the mayor was disqualified from hearing the charges in the instant case, the lower court relied on *Ortiz* v. *Venegas,* 43 P.R.R. 374 and *Peña* v. *Garcia,* 45 P.R.R. 42. The court cited, but purported to distinguish, *Municipal Assembly* v. *González, Mayor,* 55 P.R.R. 526.

The facts in the *Peña* case were different from those in the case at bar. In the *Peña* case we held that a motion for a change of venue, filed in a district court suit alleging bias and prejudice of the district judge against the plaintiff, should have been granted. But in that case "an affidavit subscribed by the plaintiff was attached, without there being any testimony under oath to impeach the statements of said plaintiff." (45 P.R.R. 42, 43). And this affidavit set up in detail several incidents which established beyond peradventure the personal enmity of long standing existing between the plaintiff and the district judge. In the case at bar the petition for disqualification fell short of making such specific charges of bias and prejudice, and even in connection with the allegation which was made, no proof thereof was offered. Acosta relied solely on the nature of the charges themselves and the fact that the Mayor himself had brought them to sustain his motion for disqualification.

It must also be borne in mind that the *Peña* case involved the alleged impropriety of trial of private litigation before a district judge who was prejudiced against one of the parties. The present case, on the other hand, does not involve litigation at all. The question here was whether the conduct of a subordinate employee warranted, after hearing on charges filed against him, his removal by his superior officer.

Although the general standards of what constitutes a fair and impartial hearing in a court apply to the adminis-

trative proceeding involved here, the test as to disqualification of the hearing officer, by the very nature of things, is somewhat different. A judge of a district court would without question be disqualified if he had filed the charges which were the subject matter of the proceedings. In the case of an executive officer like a mayor, on the other hand, not only is it unobjectionable for him both to charge and to judge, but as the superior officer of the incumbent on trial he would be likely to have some previous knowledge of the facts in controversy. Neither of these factors would *ipso facto* disqualify the mayor. "And although the mayor is the accuser, he is not disqualified to conduct the hearing and pass on the charges preferred by himself, . . ." (McQuillin, Municipal Corporations, Revised Vol. 2, §589, p. 483). See *Sharkey* v. *Thurston*, 268 N. Y. 123.

*Ortiz* v. *Venegas* and *Municipal Assembly* v. *González, Mayor, supra,* cited by the district court, are in accord on this question. The *González* case, at pages 538, 539, quotes with approval the following language from the *Venegas* case:

" 'We do not mean to say that the mayor would be disqualified by the mere fact that he is the person bringing the charges against the officer. Certainly not. The mayor is the chief executive of the municipal administration and in the discharge of his duties he may obtain direct knowledge of acts performed by the officers appointed by him which justify their removal; and in such cases, who can be in a better position than the mayor to decide the matter after hearing the officer's defense or having afforded him an opportunity to defend himself? The mayor does not act for his personal benefit, but in the interest of a good municipal administration.

" 'But when there are imputed facts of the character alleged in the motion for disqualification, the situation changes, and the officer should be given an opportunity to produce his evidence. Should such facts be established, the disqualification would be in order.' "

In its opinion the lower court, to sustain its ruling, sets forth our quotation from the opinion of the lower court in the *Venegas* case that (page 383) " 'It requires no serious or

extensive argument to conclude that a mayor who is the personal enemy of another municipal officer, and who publicly states such fact, is not in a position to act with an unprejudiced mind in judging said officer on charges brought by the mayor himself.' " But the lower court in this case overlooked the fact that no evidence of such enmity or any public expression thereof was offered in support of the petition for disqualification.

The instant case therefore comes down to this: generally speaking, disqualification of a mayor to conduct such an administrative hearing is required only on an actual showing of bias and prejudice. Here there was no proof offered to that effect. Acosta apparently rested on the facts that (a) as to two of the charges, they had been preferred by the mayor himself, and (b) as to the remaining charge, the mayor had a personal interest in the result. But each of these charges, including the threat against the Mayor, in the final analysis, involved alleged conduct of Acosta in the course of his employment. The mayor, under the above authorities, was therefore justified in bringing the charges and hearing them, in the absence of proof, which was not offered here, to show that he was unable to grant Acosta an impartial hearing.

The district court erred in annulling the order of the mayor because of the latter's refusal to disqualify himself. When the case is remanded, the lower court will be called on to consider if the charges herein justified removal and if they were established by the evidence.

The judgment of the district court will be reversed and the case remanded to the district court for further proceedings not inconsistent with this opinion.